UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CHEYENNE U.,[1]

        Plaintiff,

v.                          No. 1:24-cv-02112-MG-SEB

FRANK BISIGNANO Commissioner of
Social Security,

        Defendant.

**ORDER ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Pending before the Court is Plaintiff's Motion for Judgment on the Pleadings, [Filing No. 12.][2] For the following reasons, Plaintiff's Motion is **DENIED**, and the Commissioner's determination is **AFFIRMED**.

**I.    FACTUAL BACKGROUND**

The ALJ's decision finding Plaintiff not disabled followed the required five-step evaluation process in in 20 C.F.R. § 404.1520. Specifically, the ALJ found:

- At Step One, that Plaintiff "ha[d] not engaged in substantial gainful activity since November 23, 2021, the alleged onset date[.]"

- At Step Two, that Plaintiff "ha[d] the following severe impairments: Chronic pancreatitis and obesity[.]"

---

[1] To protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security review opinions.

[2] While Plaintiff has styled her Motion as one for a judgment on the pleadings, the Court has reviewed the case on the pleadings and the administrative record before it. 42 U.S.C § 405 ("The court shall have power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.") (emphasis added).

- At Step Three, that Plaintiff "d[id] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]"

- At Step Three but before Step Four, that Plaintiff "ha[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally lift and carry 20 pounds, and she can frequently lift and carry 10 pounds. Her ability to push and pull is unlimited except for the weights indicated. She can stand or walk for up to six hours in an eight-hour workday, and she can sit for up to six hours in an eight-hour workday. She can occasionally climb ramps or stairs, and she can never climb ladders, ropes, or scaffolding. She can frequently balance, and she can occasionally stoop, kneel, crouch, and crawl. She may have no exposure to concentrated wetness or extreme vibration, and she may have no exposure to unprotected heights or hazardous machinery."

- At Step Four, that Plaintiff was "capable of performing past relevant work as a production assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity [.]"

- And at Step Five, the ALJ concluded Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from November 23, 2021, through the date of this decision," January 26, 2024.

[Filing No. 7-2 at 20–22, 25–26.]

## I. LEGAL STANDARD

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 587 U.S. 97, 98

(2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standard, and that substantial evidence exists for the ALJ's decision. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)). In creating a logical bridge, the ALJ must meet the "minimal articulation requirement" when making the decision. *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning."); *see Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) (explaining the court reviews the ALJ's decision holistically).

## II. DISCUSSION

Plaintiff appeals the ALJ's determination on two bases: first, she argues that the ALJ failed to properly consider Plaintiff's credibility, especially regarding the impact of pain and gastrointestinal issues on her ability to work. Second, she argues that the ALJ did not properly advise Plaintiff, who proceeded pro se, of her rights and failed to adequately develop the record in multiple respects.

### A. Subjective Symptom Analysis

Plaintiff contends that the ALJ failed to properly "consider [her] credibility, especially regarding the impact of pain and gastrointestinal issues on her ability to work." [Filing No. 13 at 9.] Plaintiff argues that the ALJ merely summarized the evidence to support her finding that Plaintiff's allegations were inconsistent with the record. [Filing No. 13 at 11.] The Commissioner disagrees, arguing that the ALJ properly evaluated Plaintiff's subjective statements, and that the summaries of the evidence were sufficient. [Filing No. 17 at 5–6.]

An ALJ's subjective symptom evaluation is accorded considerable deference "because ALJs are in a special position to see, hear, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the Court] declare it to be 'patently wrong.'" *Sherlyn M. v. Saul*, 408 F. Supp. 3d 931, 950 (S.D. Ind. 2019) (quoting *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008)); *also see Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

An ALJ must "carefully evaluate all evidence bearing on the severity of pain [or symptoms] and give specific reasons for discounting a claimant's testimony about it.'" *Martinez v. Astrue,* 630 F.3d 693, 697 (7th Cir. 2011). In evaluating a claimant's credibility, the ALJ must comply with

4

Social Security Ruling 96–7p and "articulate the reasons behind credibility evaluations." *Brindisi v. Barnhart,* 315 F.3d 783, 787 (7th Cir. 2003)). SSR 16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

Consistent with our regulations, we instruct our adjudicators to consider all the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . *Id.* at *2. SSR 16-3p requires the ALJ to consider factors including, but not limited to "[o]nset, description of the character and location of the symptoms, precipitating and aggravating factors, frequency and duration, change over a period of time (e.g., whether worsening, improving, or static), and daily activities." 2017 WL 5180304, *7 (Oct. 25, 2017).

In his opinion, the ALJ here remarked "that [Plaintiff was] unable to work because of gastrointestinal pain. She said she has a clipped sphincter, which causes stabbing pain in her stomach." [Filing No. 7-2 at 24.] The ALJ further noted that Plaintiff "takes oxycodone every four hours for this, but she continues to have pain." [Filing No. 7-2 at 24.] While he found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ found that Plaintiff's "statements concerning the intensity,

5

persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" [Filing No. 7-2 at 25.] In his decision, the ALJ described Plaintiff's history of treatment for her pain, noting that she saw Jessica Samson, PA-C, for a gastrointestinal consultation on April 20, 2022. [Filing No. 7-2 at 25.] There, Plaintiff claimed her pain was not controlled, but that medications helped. [Filing No. 7-2 at 25.] On May 3, she saw Dr. Michael Dorwart, a pain management physician, and stated the "pain has been stable on oral oxycodone" and "she generally functions at a reasonable level on the medication." [Filing No. 7-2 at 25.]

The ALJ noted that, in September 2022, Plaintiff again spoke with Ms. Samson, PA-C, to whom Plaintiff expressed being "miserable." [Filing No. 7-2 at 24.] The next month, Plaintiff stated that her pain was not improving. [Filing No. 7-2 at 24.] However, on November 7, 2022, Plaintiff saw Dr. Michael Dorwart, whom she told her pain was "reasonably well managed" with oxycodone, and that she was "generally content with her therapy." [Filing No. 7-2 at 24.]

Ultimately, the ALJ found that:

> The record does not support greater limitation. Although the claimant alleged she had severe, constant abdominal pain that interfered with her ability to perform activities of daily living, she also told her pain management provider multiple times that medication worked for her and she was able to function "reasonably well." The claimant did not have emergency room or urgent care visits during the period at issue for abdominal pain. Accordingly, the evidence is not consistent with the severe limitations alleged by the claimant.

[Filing No. 7-2 at 25.] Plaintiff argues that these statements are "perfunctory," and do not "adequately consider Plaintiff's testimony as to pain and limitations in activities of daily living, or the fact that she continued to be seen regularly by gastroenterology – specialized treatment – for abdominal pain, rather than attending urgent care or the ER." [Filing No. 13 at 11.]

6

However, the ALJ's determination here is not without evidentiary support. *See Sherlyn M.*, 408 F. at 950. The ALJ began by summarizing the evidence, which he is permitted to do. *See Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("[I]f [plaintiff] is complaining that the ALJ summarized the medical evidence, that is unavailing because summaries are appropriate."). Then, after reviewing the care that Plaintiff sought for her pain, he noted Plaintiff's reports to Dr. Dorwart that her pain was reasonably managed. [Filing No. 7-2 at 25.] By doing so, the ALJ created a logical bridge between the evidence and his conclusion Plaintiff's statements did not support the alleged loss of functioning. [Filing No. 7-2 at 24.]

While Plaintiff contends that the ALJ did not sufficiently analyze the regulatory factors, specifically her testimony regarding the pain and limitations in daily activities, [Filing No. 13 at 11], "[i]t is *not* necessary that the ALJ recite findings on every factor described in SSR 96–7p, or that he discuss every piece of evidence that might bear on credibility, or that he even specify exactly which of the claimant's statements were not credible," *Tilley v. Colvin*, 2015 WL 926178, at *5 (S.D. Ind. Mar. 3, 2015) (emphasis in original) (citing *Sawyer v. Colvin,* 512 Fed. Appx. 603 at *5 (7th Cir. 2013); *also see Lindsay M. v. O'Malley*, 2024 WL 759962, at *7 (S.D. Ind. Jan. 31, 2024), *report and recommendation adopted sub nom. Lindsay A. M. v. O'Malley*, 2024 WL 758030 (S.D. Ind. Feb. 22, 2024); *Breeanna P. v. Kijakazi*, 2022 WL 4591462, at *5 (S.D. Ind. Sept. 30, 2022). Moreover, the ALJ's opinion notes Plaintiff's testimony about said limitations, but explicitly explains why other evidence in the record does not support greater limitations. [Filing No. 7-2 at 25]. The fact that the ALJ did not discuss all the analysis factors is not grounds to remand claimant's case; the ALJ's determination is not patently wrong and is thus affirmed.

### B. Plaintiff's Lack of Representation

Plaintiff argues that she was not properly apprised of her right to representation during her benefits hearing, and that the ALJ thus did not secure a valid waiver of that right. Because the ALJ did not secure a valid waiver, Plaintiff argues that the ALJ was required to develop the record, especially considering her pro se status. Plaintiff brings specific arguments regarding whether the record was adequately developed given the lack of opinion offered by a treating physician, the lack of questions regarding Plaintiff's restroom use, and the lack of cross examination of the VE and whether the ALJ's reliance on the VE was based on substantial information. The Commissioner argues that the ALJ secured a valid waiver, and that, regardless of whether the ALJ secured said waiver, the ALJ adequately developed the record. The Court addresses the question of waiver, and then the ALJ's development of the record in these specific regards.

#### i. *Waiver of Plaintiff's Right to Representation*

Claimants have a right to counsel during disability benefit proceedings, but this right may be waived. 42 U.S.C. § 406. To secure a valid waiver of counsel, an ALJ must explain to an unrepresented claimant: "(1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitation of attorney fees to 25 percent of past due benefits and required court approval of the fees." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citation modified) (quoting *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994)). The Seventh Circuit "mandate[s] more disclosures than the regulations, which require the agency simply to notify the claimant in writing of his 'options for obtaining attorneys,' and the 'organizations which provide legal services free of charge.'" *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (quoting 42 U.S.C. § 1383(d)(2)(D) and 20 C.F.R. § 404.1706). In *Jozefyk,* the Seventh Circuit affirmed that written notice is adequate. *Id.* at 497.

8

Prior to her hearing, Plaintiff received written notice that informed her of her right to representation, as well as informed her of the possibility of free counsel or a contingency arrangement. [Filing No. 7-4 at 24.] Plaintiff received written notice that, in the event she retained counsel, the limitation of attorney fees to 25% of past due benefits and required court approval of the fees. [Filing No. 7-4 at 29.] At the hearing, the ALJ reiterated that Plaintiff had the right to representation by an attorney, that said representation could be under a contingency agreement or be free, and that the limitation of attorney fees is "generally limited to either 25 percent or $7,200, whichever is less."[3] [Filing No. 7-2 at 36.] The ALJ informed Plaintiff that a representative, attorney or otherwise, could "help [her] obtain information about [her] claim, explain medical terms, help protect [her] rights, and make any requests or give any notice to [the ALJ] about the proceedings." [Filing No. 7-2 at 36.] Plaintiff confirmed to the ALJ she had read through the correspondence she received, and that she understood her right to representation as the ALJ had explained. [Filing No. 7-2 at 36–37.] Plaintiff then affirmed that she would like to proceed without representation. [Filing No. 7-2 at 37.]

Plainly, the Commissioner clearly satisfied the Seventh Circuit's waiver of representation requirements. *See Skinner*, 478 F.3d at 841. Plaintiff makes arguments regarding specific questions or information the ALJ should have sought, but this has no bearing on whether Plaintiff's waiver of the right to representation was valid, and the Court will not adopt an expansive view of waiver requiring additional specific recitations. *See Jozefyk*, 923 F.3d at 497 ("We decline to expand an

---

[3] The Social Security Act "provides a streamlined process for a representative to obtain approval of the fee the representative wishes to charge for representing a claimant before [the Social Security Administration]." Maximum Dollar Limit in the Fee Agreement Process, 89 Fed. Reg. 40523 (May 10, 2024) (citation modified). "To use that fee agreement process, the representative(s) and the claimant must agree, in a signed writing, to a fee that does not exceed the limit set by the statute, which is the lesser of 25 percent of past due benefits or a prescribed dollar amount." *Id.* At the time of the hearing, said prescribed dollar amount was $7,200. *Id.* Effective November 30, 2024, the prescribed dollar amount is $ 9,200. *Id.*

already demanding waiver standard by requiring the ALJ to recite admonishments that the agency's own regulations do not require.").

Whether the ALJ secured a valid waiver from Plaintiff is not the end of this Court's analysis. Regardless of whether the ALJ secured a valid waiver, he had a duty to develop the record. "The ALJ's duty to develop the record fully and fairly where the claimant proceeds without counsel is met if the ALJ probes the claimant for possible disabilities and uncovers all of the relevant evidence." *Binion*, 13 F.3d at 245; also see *Thompson*, 933 F.2d 581, 585–86 (explaining the heightened duty an ALJ has to develop the record when a claimant is unrepresented). The Court now turns to address Plaintiff's complaints with the ALJ's development of the record.

### ii. *Adequate Development of Record Regarding Treating Providers*

Plaintiff argues that the failure to obtain a treating opinion for Plaintiff and advise Plaintiff on the importance of a treating opinion is a reversible error. [Filing No. 13 at 12–13.] Defendant argues that such an opinion is not required, and that the record is adequately developed without at a report from Plaintiff's treating physician. [Filing No. 17 at 10–12.]

Though an ALJ is not required to seek out or rely on a report from a claimant's treating physician, *Joseph M. v. Saul*, 2019 WL 6918281 (N.D. Ill. Dec. 19, 2019) (citing 20 C.F.R. §§ 404.1520b(b)(2)(i) and 416.920b(b)(2)(i)), Plaintiff notes that courts in other circuits have found that the failure to seek a treating physician's opinion may constitute a revisable error. [Filing No. 13 at 13–14] (citing *Figaro v. Comm'r of Soc. Sec.*, 2022 WL 4647102, *4–5 (E.D.N.Y. Sept. 30, 2022) ("Although Plaintiff filed his case after March 27, 2017, and it is therefore not subject to the 'treating physician rule,' there is a growing consensus amongst courts applying the new regulations that an ALJ's obligation to develop the record still requires her to obtain the opinion of a claimant's treating source.") and *Ayala v. Kijakazi*, 2022 WL 3211463, *21 (S.D.N.Y. Aug. 9, 2022) ("Under

10

the new regulations, courts often find that an informed decision could not be reached where an ALJ failed to obtain opinion evidence from the plaintiff's long-term treating physicians . . .") (collecting cases)).

However, an ALJ's determination can still be substantially supported without the report of a long-term treating physician. See *Joseph M.*, 2019 WL 6918281 at *15. Of course, Plaintiff is correct that a report from her treating physician would provide additional insight into Plaintiff's overall health, but Plaintiff does not demonstrate that the record was incomplete without that information. Cf. *Figaro*, 2022 WL 4647102, at *4 (remanding when the record is "skeletal," consisting of sparse treatment notes and the two state assessors). The record here is decidedly not skeletal—rather, it includes the state examining physicians, the physician assistant Plaintiff communicated with for pain relief, as well as information from the physician she saw for treatment of the pain caused by her gastrointestinal issues. Plaintiff does not identify how the record is insufficient without a report from Plaintiff's treating physician, and the Court does not find that the record was insufficient for the ALJ to make his determination. For those reasons, the lack of an opinion from a treating physician is not grounds for remand, either.

### iii. *Adequate Development of Record Regarding Bathroom Use*

Plaintiff argues next that the ALJ failed to adequately develop the record as it relates to Plaintiff's bathroom use. [Filing No. 13 at 14.] Specifically, Plaintiff contends that the record clearly indicated her need to take frequent breaks. [Filing No. 13 at 14.] The Commissioner disagrees, arguing that Plaintiff's bathroom requirements were not obvious from the record, and that the ALJ met his burden to develop the record in this regard. [Filing No. 17 at 13–14.]

As discussed, the ALJ had a duty to develop the record even when Plaintiff validly waived the right to representation. See *Jozefyk*, 923 F.3d at 49. Plaintiff cites to a number of cases where

11

the need to use the bathroom was not properly considered by the ALJ, [Filing No. 13 at 14] (citing *Nancy J. H. v. Saul*, 2019 WL 2559543, *2 (S.D. Ind. June 21, 2019); *Seals v. Berryhill*, 2017 WL 2416293, *5 (S.D. Ind. June 5, 2017); *Sharp v. Colvin*, 2015 WL 926190, *4 (S.D. Ind. Mar. 4, 2015)), but the operative question is not whether bathroom issues *could be* salient for a claimant's disability determination, but rather whether the ALJ made the requisite inquiry into the record.

The administrative record reflects Plaintiff struggling with constipation and diarrhea, *see, e.g.*, [Filing No. 7-7 at 209, 312.] The record also reflected that she may have two to three "runny stools" a day, or go without a bowel movement for four to five days. [Filing No. 7-7 at 312.] Other times, Plaintiff denied diarrhea, constipation, bowel, or bladder dysfunction. *See, e.g.*, [Filing No. 7-2 at 25, Filing No. 7-7 at 345.] At the hearing, the ALJ discussed Plaintiff's medical condition with her, and discussed Plaintiff's typical day. *See* [Filing No. 7-2 at 60–63.] Plaintiff did not mention having to use the restroom a remarkable number of times. *See* [Filing No. 7-2 at 60–63.] Plaintiff argues that, in addition to the ALJ's knowledge about her gastrointestinal issues, these instances of treatment relating to her bathroom use put the ALJ on notice that this was an area into which he needed to further develop the record. [Filing No. 13 at 14.] Plaintiff argues that the ALJ's question to the VE regarding off-time illustrates that he knew that bathroom use was a salient issue regarding Plaintiff's ability to perform work. [Filing No. 13 at 14.]

First, the Court disagrees that Plaintiff's bathroom needs were an obvious point of inquiry for the ALJ. It is true that the Plaintiff indicated gastrointestinal issues, and that these issues affected the quality and frequency of her bowel movements. To start, the Court is reluctant to require that the ALJ speculate to issues that are not clear from the record. *See Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[B]ecause it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much

12

evidence to gather should generally be respected.") (citing *Luna v. Shalala,* 22 F.3d 687, 692 (7th Cir.1994)) Moreover, the record on this question is mixed, making any issue with frequency even less obvious. Second, the Court is not inclined to construe the ALJ's question to the VE about off-time as indicating that the ALJ knew about Plaintiff's need to frequently use the bathroom. Even if the question addressed off-time need for bathroom use (and not the pain or other issues Plaintiff reported), as the Court has discussed, it is not clear from the record that this issue warranted additional questioning.

As a supplemental argument, Plaintiff argues that she "cannot be faulted" for failing to bring up issues of bathroom use because it involves issues that may be embarrassing for Plaintiff, and that Plaintiff did not know the "functional relevance" of the issue to her disability claim. [Filing No. 13 at 14.] The Court is unpersuaded by this argument. Plaintiff correctly emphasizes that it is the ALJ who bears the burden to develop the record of unrepresented claimants because they possess the reasoned judgment to know what details of the record and the claimant's life are relevant. However, when it comes to details about the claimant's life that are not obvious from the record, a claimant is the best situated to supplement the proceeding with their own testimony and details. There is no indication that Plaintiff was unable to discuss her bathroom needs, nor that she lacked understanding of the proceedings. *Cf. Ransom v. Bowen,* 844 F.2d 1326, 1330 n.4 (7th Cir.) ("When a claimant is both unrepresented *and* suffers from a mental impairment . . . the ALJ's duty to carefully develop the record is even greater.").

Here, Plaintiff was told what information the ALJ was to consider during the disposition of her case, admonishing to "inform [the Commissioner] or submit **all** evidence known to you that relates to whether or not you are . . . disabled." [Filing No. 7-4 at 42] (emphasis in original). While Plaintiff may have been embarrassed about aspects of her case, the hearing was a closed

13

proceeding, one that contained extensive conversation about her medical history. Plaintiff was instructed to inform the ALJ about any relevant information and failed to do so regarding her bathroom use frequency affecting her capacity to work.

In cases where claimants are unrepresented, ALJs are given the complex task to develop the record without being an advocate for a claimant or fashioning arguments for them. The law does not require unrepresented claimants to advocate for themselves in the way a lawyer or other representative would, but they are nonetheless best-situated to inform the ALJ of medical issues that would affect their capacity to do work. Here, the record did not indicate that a line of questioning scrutinizing the VE's methods was required, nor did Plaintiff raise the issue at the hearing. For those reasons, the Court finds that the ALJ met his burden to develop the record on this issue.

### iv.  Right to Cross-Examine the Witness and VE testimony

Finally, Plaintiff argues that she was not properly apprised of her right to cross examine the VE, and that the lack of questions relating to the VE's "methodologies, the reliability of the job numbers testified to, or where the numbers came from" evince that the ALJ's conclusion was not substantially supported by evidence and therefore should be reversed. [Filing No. 13 at 15] (citing *Montgomery v. Saul*, 2020 WL 5757983, *5 (N.D. Ind. Sept. 28, 2020)). The Commissioner argues that Plaintiff was properly apprised of the right to cross examine any witnesses, and that Plaintiff's arguments questioning the VE are "vague" and "of the speculative type . . . that the Seventh Circuit has found insufficient to warrant remand." [Filing No. 17 at 14–15.]

First, the Court finds that the ALJ properly apprised the claimant of her right to cross examine the VE. Prior to the hearing, Plaintiff received written notice regarding her ability to question witnesses, which stated Plaintiff "may review submitted documents present and question

14

witnesses, state your case, and make statements about the facts and law." [Filing No. 7-4 at 44.] At the hearing, after the VE finished her testimony elicited by the ALJ, the ALJ asked Plaintiff if "she ha[d] any question about the vocation expert's testimony[.]" [Filing No. 7-2 at 64.] The Plaintiff was properly apprised of her right to cross-examine the VE. Though the ALJ did not explicitly use the words "cross examine," Plaintiff was still permitted the opportunity to ask questions after the VE gave her testimony.

In support of his contention, the Commissioner offers a case from the Sixth Circuit Court of Appeals, *Thomas v. Comm'r of Soc. Sec.*, 550 F. App'x 289, 291 (6th Cir. 2014). [Filing No. 17 at 15.] While not binding on this Court, its reasoning is persuasive here. In *Thomas*, the Sixth Circuit held that an ALJ did not impermissibly err by "failing to explicitly invite Thomas to cross-examine the vocational expert," as "Thomas had been notified in writing that she could speak to the expert, the ALJ gave her the opportunity to speak after the expert testified, and Thomas [did] not identif[y] any significant inaccuracy in the expert's testimony or any significant testimony that she could have elicited." *Thomas*, 550 F. App'x 289 at 291. Here, Plaintiff was given the opportunity to speak and was informed in writing that she would have the opportunity at the hearing. For those reasons, Plaintiff was properly informed of her right to cross-examine.

Second, Plaintiff fails to identify what useful testimony would have been elicited during cross examination of the VE. Plaintiff argues that the record lacked specifics about the foundations of the VE's testimony, but, as the Commissioner correctly contends, further inquiry into the basis for a VE's job estimates is not required by the ALJ where the ALJ has no reason to suspect those estimates. *Schmitz v. Colvin*, 124 F.4th 1029, 1033 (7th Cir. 2024) ("[A]ssuming there are no obvious flaws in the testimony, where a claimant has failed to put the vocational expert's foundation or methodology into issue and the expert's testimony is otherwise uncontradicted, the

15

ALJ is entitled to credit that testimony."); *also see Liskowitz v. Astrue,* 559 F.3d 736, 746 (7th Cir. 2009); and *Donahue v. Barnhart,* 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion[.]"). At the hearing, Plaintiff did not contest the basis for the VE's methodology, *see* [Filing No. 7-4 at 64–65], and now fails to identify a particular flaw in the VE's methodology or a basis upon which Plaintiff was prejudiced through not having questioned the VE, *see* [Filing No. 13.] For those reasons, neither the Plaintiff's lack of cross examination of the VE, nor the ALJ's lack of questions on the VE's methodology constitute grounds for remand.

### III. CONCLUSION

For those reasons, the Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits. Plaintiff's Motion for Judgment on the Pleadings, [Filing No. 12], is **DENIED**. Final judgment will issue accordingly.

Date: 3/12/2026

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

Distribution:

To ECF Counsel of Record